1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*E-FILED - 3/25/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR ARTURO OROPEZA,<br><br>          Petitioner,<br><br>  vs.<br><br>J.D. STOKES, Warden,<br><br>          Respondent. | No. C 05-3089 RMW (PR)<br><br>ORDER DENYING PETITION<br>FOR WRIT OF HABEAS<br>CORPUS<br><br>(Docket No. 20) |

        Petitioner, a California prisoner proceeding pro se, filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Prison

Terms' ("Board") denial of parole after his July 21, 2004 parole suitability hearing.  The

court ordered respondent to show cause why the petition should not be granted.

Respondent filed an answer addressing the merits of the petition, and petitioner filed a

traverse.  Petitioner has also filed a motion for judicial notice, which the court discusses

below.

## BACKGROUND

        On January 7, 1992, petitioner was convicted by a jury in Santa Clara County

Superior Court of second degree murder.  Resp. Ex. B at 2 (Unpublished Opinion of the

California Court of Appeal, Sixth Appellate District, People v. Menchaca, et al., No.

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.05\Oropeza089den.wpd

1  H009479 (Oct. 7, 1993)).[1]  He was sentenced to fifteen years to life in state prison.  Id.

2  The murder occurred when, after an evening of drinking, petitioner – the passenger in a

3  car – and his co-defendant Menchaca – the driver – exchanged words and gestures with

4  the occupants of one car, and then initiated a confrontation with the occupants of a second

5  car.  Petitioner was seen holding a knife.  When the victim, who was a passenger in the

6  second car, exited the car to see why petitioner and Menchaca were blocking the car from

7  leaving, he was attacked.  He died after having suffered twenty three stab wounds.  Resp.

8  Ex. D at 12-19 (transcript of initial parole consideration hearing).

9       At petitioner's second parole consideration hearing, held on July 21, 2004,

10  approximately 12 years after his conviction, the Board found that petitioner was

11  unsuitable for parole.  (Resp. Ex. 4 at 125.)  Petitioner filed a state habeas corpus petition

12  in superior court challenging the parole denial, which was denied on March 8, 2005.

13  (Resp. Ex. 5.)  Petitioner also filed state habeas corpus petitions in the California Court of

14  Appeal and the California Supreme Court.  Both of these petitions were denied

15  summarily, without citation or comment.  (Resp. Exs. 6 & 7.)  Petitioner filed the present

16  federal habeas corpus petition on July 29, 2005.[2]

17

18       [1]Petitioner's co-defendant, Gerardo Jerry Menchaca, was found guilty of second
19  degree murder and received a sentence of sixteen years to life.  This court previously
    denied habeas corpus petitions filed by petitioner and Menchaca challenging the
20  constitutional validity of their convictions.  See Oropeza v. Clark, C 97-20736 RMW;
21  Menchaca v. Clarke, C 96-20295 RMW.

22       [2]The Board has since denied parole at a third parole consideration hearing, in 2006.
    The Santa Clara County Superior Court granted a petition for a writ of habeas corpus
23  challenging the Board's 2006 decision.  The superior court decision is on appeal and has
24  been stayed by California Court of Appeal pending appeal.  Petitioner's motion for
    judicial notice of the superior court decision is GRANTED.  See Fed. R. Evid. 201(b);
25  Taylor v. Charter Med. Corp., 162 F.3d 827, 828 (5th Cir. 1998) (holding that records of
26  another court, but not its factual findings, are judicially noticeable).  The court notes that
    the doctrines of collateral estoppel and res judicata do not apply because the superior
27  court decision addressed the constitutionality of the 2006 Board decision, not the 2004
28  decision challenged in this case.  See generally Montana v. United States, 440 U.S. 147,

1

**DISCUSSION**

2  A.   Standard of Review

3        A federal habeas court will entertain a petition for a writ of habeas corpus "in

4  behalf of a person in custody pursuant to the judgment of a State court only on the ground

5  that he is in custody in violation of the Constitution or laws or treaties of the United

6  States." 28 U.S.C. § 2254(a).  The court may not grant a petition with respect to any

7  claim that was adjudicated on the merits in state court unless the state court's adjudication

8  of the claim "resulted in a decision that was contrary to, or involved an unreasonable

9  application of, clearly established Federal law, as determined by the Supreme Court of the

10 United States[.]" Id. § 2254(d)(1).  Section 2254(d) applies to a habeas petition from a

11 state prisoner challenging the denial of parole.  See Sass, 461 F.3d at 1126-27.

12       "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

13 state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

14 question of law or if the state court decides a case differently than [the Supreme] Court

15 has on a set of materially indistinguishable facts." Williams v. (Terry) Taylor, 529 U.S.

16 362, 412-413 (2000).  "Under the 'unreasonable application clause,' a federal habeas

17 court may grant the writ if the state court identifies the correct governing legal principle

18 from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

19 of the prisoner's case." Id. at 413.

20       A federal habeas court may also grant the writ if it concludes that the state court's

21 adjudication of the claim "resulted in a decision that was based on an unreasonable

22 determination of the facts in light of the evidence presented in the State court

23 proceeding." 28 U.S.C. § 2254(d)(2).  The court must presume correct any determination

24 of a factual issue made by a state court unless the petitioner rebuts the presumption of

25 correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

26

27 ————————————————

28 153 (1979).

1    B.    Petitioner's Claims

2         1.    Applicable Legal Standards

3              a.    The Requirements of Federal Due Process

4         "In analyzing the procedural safeguards owed to an inmate under the Due Process

5    clause, [a court] must look to two distinct elements: (1) a deprivation of a constitutionally

6    protected liberty or property interest, and (2) a denial of adequate procedural safeguards."

7    Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir. 2003).  In the parole context, the second

8    prong of this test is satisfied if (1) the inmate has been afforded an opportunity to be

9    heard and, if denied parole, informed of the reasons underlying the decision and

10   (2) "some evidence" supports the decision to grant or deny parole.  See Sass, 461 F.3d at

11   1129 (adopting "some evidence" standard for disciplinary hearings outlined in

12   Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).

13        "To determine whether the some evidence standard is met 'does not require

14   examination of the entire record, independent assessment of the credibility of witnesses,

15   or weighing of the evidence.  Instead, the relevant question is whether there is any

16   evidence in the record that could support the conclusion reached'" by the parole board.

17   Id. at 1128 (quoting Superintendent v. Hill, 472 U.S. at 455-56).  The "some evidence

18   standard is minimal, and assures that 'the record is not so devoid of evidence that the

19   findings of the . . . board were without support or otherwise arbitrary.'"  Id. at 1129

20   (quoting Superintendent v. Hill, 472 U.S. at 457).  The "some evidence" standard of

21   Superintendent v. Hill is clearly established law for purposes of § 2254(d).  Id.

22             b.    State Law Standards for Granting Parole

23        California's parole scheme sets out the criteria the BPT must evaluate when

24   considering whether a prisoner is suitable for parole.

25        A prisoner's first parole suitability hearing is to be held one year before his

26   minimum eligible parole release date.  Cal. Pen. Code § 3041(a).  At the hearing, the

27   parole board "shall" set a release date,

28

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.05\Oropeza089den.wpd

1

> unless it determines that the gravity of the current convicted offense or
> offenses, or the timing and gravity of current or past convicted offense or
> offenses, is such that consideration of the public safety requires a more
> lengthy period of incarceration for this individual, and that a parole date,
> therefore, cannot be fixed at this meeting.

2

3

4   Cal. Penal Code § 3041(b).

5   Sections 2402, et seq., of title 15 of the California Code of Regulations set forth

6   the criteria the BPT panel must consider when determining whether a release date can be

7   set for a prisoner like petitioner, who was convicted of second degree murder and is

8   serving an indeterminate life sentence.  The opening paragraph of section 2402(a) states:

9

> Regardless of the length of time served, a life prisoner shall be found
> unsuitable for and denied parole if in the judgment of the panel the prisoner
> will pose an unreasonable risk of danger to society if released from prison.

10

11   In making its determination whether a prisoner is suitable for parole, the panel may

12   consider all relevant and reliable information available to it.  Cal. Code Regs., tit. 15,

13   § 2402(b).  Circumstances tending to show unsuitability for parole include the nature of

14   the commitment offense and consideration of whether "[t]he prisoner committed the

15   offense in an especially heinous, atrocious or cruel manner."  Id. § 2402(c)(1).  This

16   includes consideration of the number of victims, whether "[t]he offense was carried out in

17   a dispassionate and calculated manner," whether the victim was "abused, defiled or

18   mutilated during or after the offense," whether "[t]he offense was carried out in a manner

19   which demonstrates an exceptionally callous disregard for human suffering," and whether

20   "[t]he motive for the crime is inexplicable or very trivial in relation to the offense."  Id.

21   Circumstances tending to support a finding of suitability for parole include no

22   juvenile record, a stable social history, signs of remorse, the crime was committed as a

23   result of significant stress in the prisoner's life, a lack of criminal history, a reduced

24   possibility of recidivism due to the prisoner's present age, realistic plans for release or the

25   development of marketable skills that can be put to use upon release, and institutional

26   activities that indicate an enhanced ability to function within the law upon release.  Id.

27   § 2402(d).

28

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.05\Oropeza089den.wpd

1    The parole regulations include a matrix of suggested base terms of incarceration

2    depending on the circumstances surrounding the murder and the relationship between the

3    murderer and victim.  Id. § 2403.  For those convicted of second degree murder, the

4    matrix of base terms ranges from a low of 15, 16 or 17 years, to a high of 19, 20, or 21

5    years.  Although the matrix is to be used to establish a base term, this occurs only once

6    the prisoner has been found suitable for parole.  Id. § 2403(a).

7    The California Supreme Court has found that the statutory scheme places

8    individual suitability for parole above a prisoner's expectancy in early setting of a fixed

9    date designed to ensure term uniformity:

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raises "*public safety*" concerns requiring further indefinite incarceration.  (Italics added.)  Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

In re Dannenberg, 34 Cal. 4th 1061, 1070 (2005) (emphasis, brackets, and parentheses as

in original).  Thus, "the Board, exercising its traditional broad discretion, may protect

public safety in each discrete case by considering the dangerous implications of a life-

maximum prisoner's crime individually."  Id. at 1071.

2.   Discussion

a.   Whether Some Evidence Supported the BPT's Decision

California law makes clear that the "'findings that are necessary to deem a prisoner

unsuitable for parole,' are not that a particular factor or factors indicating unsuitability

exist, but that a prisoner's release will unreasonably endanger public safety."  Hayward v.

Marshall, No. 06-55392, slip op. 35, 49 (9th Cir. Jan. 3, 2008) (citation omitted).

Accordingly, the "some evidence" test is not whether some evidence supports the reasons

cited by the Board for denying parole, but whether some evidence indicates a parolee's

release unreasonably endangers public safety.  See id.  "Some evidence of the existence

1  of a particular factor does not necessarily equate to some evidence the parolee's release

2  unreasonably endangers public safety." Id. (citations omitted).

3      Here, the Board panel denied petitioner parole, finding that "the prisoner is not

4  suitable for parole and would pose an unreasonable risk of danger to society or a threat to

5  public safety if released from prison." (Resp. Ex. 5 at 125.) Specifically, the panel based

6  its determination on the following:

7      Regarding the commitment offense, the offense was carried out in an
       especially cruel and callous manner. The offense was carried out in a
8      dispassionate and calculated manner. The victim was abused, defiled, and
       mutilated during the offense. The offense was carried out in a manner
9      which demonstrated an exceptionally callous disregard for human suffering.
       The motive for the crime is inexplicable or very trivial in relation to the
10     offense. These conclusions were drawn from the Statement of Facts where
       on the night of March 1st and Mach 2nd, 1991, the inmate and his
11     codefendant assaulted Richard Figueroa by stabbing him 23 times, 15 of
       these stabbings were lethal wounds.
12

13 (Id. at 125-26.) The panel also found that the petitioner had not sufficiently participated

14 in beneficial self help programming with respect to alcohol abuse in light of the central

15 role of alcohol in the commitment offense. (Id. at 126.) The panel also noted that the

16 psychiatrist who examined petitioner did not completely support petitioner's release, and

17 rated petitioner's insight and judgment only as fair. (Id. at 126-27.) The Board further

18 found that petitioner's parole plans were not sufficiently clear in that he did not have

19 letters demonstrating the job and housing offer that petitioner indicated he would have

20 upon his release. (Id. at 127.) Finally, the District Attorney and the victim's next-of-kin

21 objected to his release. (Id. at 127-28.) The Board commended petitioner for his

22 engagement in Alcoholics Anonymous, work and vocation programs, academic programs,

23 tutoring and other programs helping others. (Id. at 128-29.) Nevertheless, the Board

24 found that "these positive aspects . . . do not outweigh the factors of unsuitability." (Id. at

25 129.)

26     In the present petition, petitioner argues that the facts surrounding his commitment

27 offense, the evaluation of the psychiatrist, his participation in prison programs, his use of

28 alcohol prior to conviction, and his parole plans do not support the denial of parole, and

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.05\Oropeza089den.wpd

1   therefore the decision to deny parole therefore violated due process.  This contention is

2   without merit.  Having reviewed the transcript of the hearing, the court finds that the

3   reasons cited by the Board support its conclusion that petitioner was not suitable for

4   parole and "would pose an unreasonable risk of danger to society or a threat to public

5   safety if released from prison."  <u>See</u>, <u>e.g.</u>, <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232 (9th Cir.

6   2005) (nature and circumstances of prisoner's crime, along with his psychiatric reports,

7   constituted evidence with sufficient reliability to support board's denial of parole and

8   deferment of next parole suitability hearing for 5 years).  The court therefore concludes

9   that the state court's decision to uphold the BPT's findings was not based on an

10  unreasonable determination of the facts in light of the evidence presented in the state

11  court proceeding, 28 U.S.C. § 2254(d)(2), nor was it contrary to or an unreasonable

12  application of clearly established federal law, <u>id.</u> at § 2254(d)(1).

13       The Court notes Ninth Circuit in <u>Biggs v. Terhune</u> expressed the concern that

14  "over time" the Board's "continued reliance in the future on an unchanging factor, the

15  circumstance of the offense and conduct prior to imprisonment" would "raise serious

16  questions involving his liberty interest in parole."  334 F.3d 910, 916 (9th Cir. 2003).

17  More recently, the Ninth Circuit has recently criticized this statement as beyond the scope

18  of the dispute before the court, however: "Under AEDPA it is not our function to

19  speculate about how future parole hearings could proceed."  <u>Sass</u>, 461 F.3d at 1129.  In

20  any event, to whatever extent the dicta in <u>Biggs</u> remains in force, the challenged parole

21  denial here took place after petitioner had served 12 years in state prison, which is less

22  than his minimum term of 15 years to implicate the concerns raised in <u>Biggs</u>.  <u>See</u>, <u>e.g.</u>,

23  <u>Irons</u>, 479 F.3d at 661 (upholding reliance upon commitment offense to deny parole after

24  petitioner had served 16 years in prison, which was less than the minimum term); <u>Sass</u>,

25  461 F.3d at 1129 (same, for denials of parole after petitioner had served 11 and 12 years

26  in prison); <u>compare</u> <u>Hayward</u>, slip op. at 54-55 (after 30 years in prison, the unchanging

27  factor of the gravity of petitioner's 25 year-old commitment offense, on its own, had no

28

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.05\Oropeza089den.wpd

1  predictive value regarding his suitability for parole). More importantly, this case does not

2  raise the concerns addressed in <u>Biggs</u> because, as discussed above, there was evidence that

3  petitioner was unsuitable for parole for additional reasons besides the circumstances of the

4  offense and petitioner's pre-offense behavior.

5         b.    <u>Whether Third-Party Participants Rendered the Hearing Unfair</u>

6       Family members of the victim attended petitioner's parole suitability hearing and

7  made statements on the record arguing against granting petitioner parole. Under

8  California's parole scheme, the next of kin or immediate family members of a victim who

9  has died may, upon request, appear at a parole suitability hearing to make a statement.

10  Cal. Code Regs., tit. 15, § 2029(a). The listed categories of next of kin and immediate

11  family members consist of the victim's spouse, children, parents, siblings, grandchildren

12  and grandparents. <u>Id.</u> § 2029(b). The regulations provide that up to two persons in these

13  categories may appear at the hearing, but "[m]ore than two persons may appear with the

14  prior approval of a panel member, the chairman, or the executive officer." <u>Id.</u> § 2029(c).

15       In the present petition, petitioner argues that the testimony of family members

16  violated state law and his federal constitutional right to due process. The federal writ of

17  habeas corpus is unavailable for violations of state law or for alleged error in the

18  interpretation or application of state law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).

19  Therefore, if any state regulations were violated, petitioner is not entitled to habeas

20  corpus relief as a result.

21       With respect to his due process claim, petitioner has cited to no clearly established

22  Supreme Court precedent which creates a constitutionally protected liberty interest in the

23  number or categories of persons who may appear on a victim's behalf at a parole

24  suitability hearing. As explained above, in order to obtain federal habeas relief, the state

25  court's denial of petitioner's claim must be contrary to or an unreasonable application of

26  "clearly established" precedent from the United States Supreme Court. 28 U.S.C. §

27  2254(d)(1). Nor has he shown that the testimony of the victims' family members

28

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.05\Oropeza089den.wpd

1    deprived him of a fair and impartial hearing.  As previously discussed, the Board's

2    decision was amply supported by the evidence in the record.

3          The court finds that the state court's decision was not based on an unreasonable

4    determination of the facts in light of the evidence presented in the state court proceeding,

5    28 U.S.C. § 2254(d)(2), nor was it contrary to or an unreasonable application of clearly

6    established federal law, id. § 2254(d)(1).

7                                **CONCLUSION**

8          The court finds that petitioner has failed to show any violation of his federal

9    constitutional rights in the underlying state court proceedings and parole hearing.

10   Accordingly, the petition for writ of habeas corpus is DENIED.

11         Petitioner's motion for judicial notice is GRANTED.

12         The clerk shall enter judgment and close the file.

13         This order terminates docket number 20 and any other pending motions.

14         IT IS SO ORDERED.

15   DATED:  __3/21/08_____

16                                RONALD M. WHYTE
                                  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
G:\PRO-SE\SJ.Rmw\HC.05\Oropeza089den.wpd